UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
In the Matter of the Arbitration Between: DR. GERALD
R. FINKEL, as Chairman of the Joint Industry Board
of the Electrical Industry,

                Petitioner,                      MEMORANDUM
                                                              AND ORDER
                                                              18 CV 3798 (CBA)(RML)

    -and-

ALLSTATE ELECTRIC CORPORATION,

                Respondent.
------------------------------------------------------------------------X
LEVY, United States Magistrate Judge:

        Petitioner commenced this action on June 29, 2018, seeking confirmation of an arbitration award. Respondent disputes the amount due and claims it should be excused from paying the liquidated damages portion of the award. The parties have consented to my jurisdiction to decide petitioner's motion to confirm the award. (See Consent to Magistrate Judge Disposition, dated Feb. 8, 2019, Dkt. No. 22.) For the reasons explained below, petitioner's motion is granted in part and denied in part. The award is confirmed, including the liquidated damages portion, for which respondent remains liable. However, respondent is entitled to a reduction in the amount due for payments it has made since the award was issued that petitioner did not apply to the award balance.

## BACKGROUND AND FACTS

        Petitioner, Dr. Gerald R. Finkel, is the Chairman of the Joint Industry Board of the Electrical Industry (the "JIB"), which serves as administrator and fiduciary of various multiemployer benefit plans (collectively, the "Plans") for members of Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO (the "Union"). (Petition to Confirm Arbitration Award, dated June 29, 2018 ("Pet."), Dkt. No. 1, ¶ 4.) Respondent, Allstate Electric

Corporation, is a member of the New York Electrical Contractors Association, Inc. and the Association of Electrical Contractors, Inc. (together, the "Associations"). (Id. ¶ 14.) As a member of the Associations, respondent agreed to be bound by the Collective Bargaining Agreement ("CBA") between the Associations and the Union. Id. The CBA required respondent to make weekly contributions to each of the Plans, except for the Deferred Salary Plan (DSP). (Id. ¶ 6.) With respect to the DSP, respondent was required to deduct a specified percentage of the weekly wages of eligible employees and remit those amounts to the DSP. (Id. ¶ 8.) Respondent was also required to make employer contributions to the DSP. (Id.)

The CBAs provide that the parties shall be bound by the provisions of the Plan and Trust documents established by petitioner. (Collective Bargaining Agreement, effective May 11, 2016 through April 10, 2019 (the "CBA"), Ex. A to Pet., Dkt. No. 1-1, Art. 2, Sec. 12(a).) Those documents include petitioner's Policy for the Collection of Delinquent Contributions ("Collection Policy") and Arbitration Procedures and Rules Governing Employer Delinquency Disputes and Audits ("Arbitration Procedures.") (See Collection Policy, Ex. B to Pet., Dkt. No. 1-2; Arbitration Procedures, Ex. C to Pet., Dkt. No. 1-3.) After an audit revealed that respondent had failed to remit contributions for a number of weeks, petitioner pursued arbitration pursuant to the Collection Policy and Arbitration Procedures. (Pet. ¶¶ 26-30.)

An arbitration hearing was held on June 5, 2018 before the designated arbitrator Thomas J. Lilly, Jr. (See Arbitration Award, dated June 12, 2018 (the "Award"), Ex. G to Pet., Dkt. No. 1-7.) Both parties were present at the hearing. (See id.) On June 12, 2018, the arbitrator issued an award requiring respondent to pay a total of $915,030.97, consisting of $655,384.18 in delinquent contributions, $24,506.53 in interest, $79,761.19 in audit deficiencies,

$147,029.07 in liquidated damages, $6,950.00 in attorney's fees and costs, and $1,400 in arbitration fees. (Id. at 7.)

After respondent failed to abide by the award, petitioner commenced this action pursuant to section 9 of the Federal Arbitration Act, codified as amended, 9 U.S.C. § 9, section 301 of the Labor Management Relations Act of 1947, codified as amended, 29 U.S.C. § 185, and section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), codified as amended, 29 U.S.C. § 1132(a)(3). (See Pet. ¶¶ 1, 34.) Respondent subsequently paid the portion of the award owing to delinquent contributions, leaving a balance of $259,646.79 unpaid. (See Memorandum Law in Support of Petitioner's Motion to Confirm Arbitration Award, dated Feb. 22, 2019 ("Pet.'s Mem."), Dkt. No. 26; Memorandum of Law in Further Support of Petitioner's Motion to Confirm Arbitration Award, dated Apr. 12, 2019 ("Pet.'s Reply"), Dkt. No. 34.) On December 17, 2018, I held a settlement conference at which the parties reached a settlement in principle. (See Minute Entry, dated Dec. 17, 2018.) However, the parties were unable to execute a settlement agreement due to a dispute over a material term that petitioner proposed. (See Letter of Nicole Marimon, Esq., dated Mar. 28, 2019, Dkt. No. 30.)

It is undisputed that no settlement was reached between the parties due to the breakdown in negotiations. (See Pet.'s Reply at 3; Declaration of Michael Rabinowitz, Esq., in Opposition to Petitioner's Motion to Confirm Arbitration Award, dated Apr. 5, 2019 ("Rabinowitz Decl."), Dkt. No. 32, ¶ 7; Declaration of Robert Falesto in Opposition to Petitioner's Motion to Confirm Arbitration Award, dated Apr. 4, 2019, ("Falesto Decl."), Dkt. No. 33, ¶ 7.) Nevertheless, respondent began sending weekly checks to petitioner labeled "settlement payment" and numbered "1 of 24," "2 of 24," etc. to correspond to the number of payments that would have been made under the settlement agreement had it been executed. (See

3

Rabinowitz Decl. ¶ 8; Falesto Decl. ¶¶ 9-10; Original Checks, Ex. A to Falesto Decl., Dkt. No. 33-1.) Petitioner cashed respondent's checks, but did not apply them to the award balance. (See Pet.'s Reply at 4.) Instead, petitioner applied them as payments on account to satisfy other debts respondent owed. (Id.)

Respondent claims to have made payments totaling $173,322.50[1] that should have been applied to the award balance. (See Rabinowitz Decl. ¶ 17.) Respondent additionally maintains that it should not be held liable for the liquidated damages portion of the award because it is petitioner's policy to waive liquidated damages on settled cases and because petitioner was unreasonable in failing to effectuate the settlement in this case. (See id. ¶¶ 13-15.) After subtracting the liquidated damages of $147,029.07 from the $259,646.79 that remained of the award following respondent's earlier payments, respondent claims it was only liable for $112,617.72. (Id. ¶ 16.) Thus, by respondent's account, it has already satisfied the full balance for which it was liable. (Id. ¶ 17.)

Petitioner argues that, because respondent sent its payments with the understanding that no settlement was in place, it was not bound to apply those payments to the award balance. (See Pet.'s Reply at 4.) Petitioner further denies that it has a policy of waiving liquidated damages, though it notes that it may do so at its discretion when an employer fully complies with a negotiated settlement agreement. (Id. at 5-6.) Since it is undisputed that there was no settlement in this case, petitioner argues that respondent remains liable for the liquidated damages portion of the award. (Id. at 6.) Thus, by petitioner's account, the full balance of $259,646.79 remains due. (Id.)

---

[1] As discussed in greater detail *infra*, petitioner disputes this figure, claiming it only received payments totaling $133,325. (See Declaration of Christina Sessa, dated Apr. 12, 2019 ("Sessa Decl."), Dkt. No. 35, ¶ 10.)

4

## DISCUSSION

### A. Legal Standard

Confirmation of an arbitration award is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks and citation omitted). Courts must grant an arbitrator's decision "great deference." Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003). The arbitrator's rationale need not be explained, and the award should be confirmed "if a ground for the arbitrator's decision can be inferred from the facts of the case." D.H. Blair, 462 F.3d at 110 (quoting Barbier v. Shearson Lehman Hutton, Inc., 984 F.2d 117, 121 (2d Cir. 1991)). Only "a barely colorable justification for the outcome reached" is necessary to confirm the award. Id.

### B. Analysis

#### 1. Confirmation of the Award

After examining the parties' submissions, I find that there is more than a barely colorable justification for the Award. At the June 5, 2018 arbitration hearing, petitioner put forth as evidence: (1) its Notice of Intention to Arbitrate and Statement of Claims, (2) its Prehearing Memorandum of Law, and (3) a summary of the amounts claimed. (Award at 2.) After reviewing the evidence submitted by petitioner, the arbitrator determined that respondent was liable to petitioner in the amount of $915,030.97. (Id. at 7). Respondent subsequently paid a portion of the award, leaving a balance of $259,646.79 unpaid. (See Pet.'s Reply at 1.) Respondent does not challenge the validity of the underlying award; only the amount which remains due. (See Rabinowitz Decl.) Because I find nothing in the record that would cause the

court to question the award, the award is confirmed. However, as discussed *infra*, respondent is entitled to a reduction in the amount due to account for the additional payments it has made.

2. Allocation of Payments

It is undisputed that, following the breakdown in settlement negotiations, respondent sent a series of checks to petitioner, marked "settlement payment," which petitioner cashed but did not apply to the award balance. (See Pet.'s Reply at 3; Rabinowitz Decl. ¶ 8; Original Checks.) The issues remaining in dispute are: (1) whether petitioner was bound to apply respondent's payments to the award balance; (2) whether respondent is required to pay the liquidated damages portion of the award; and (3) the precise amount which remains owing.

Under New York law, "when a debtor owes multiple obligations to a creditor, and the debtor makes a payment, the debtor has the initial right to specify which obligation he wishes the payment to be applied to." Idearc Media v. Alex Figliolia Contracting Corp., No. 09 CV 4628, 2011 WL 2463533, at *1 (E.D.N.Y. June 21, 2011) (quoting MBT Bank v. Fed. Armored Exp., Inc., 949 F. Supp. 226, 229 (S.D.N.Y. 1997), rev'd on other grounds, 175 F.3d 283 (2d Cir. 1999)). Only "absent a direction by the debtor" may the creditor choose how to apply the funds. Id. This principle is "premised upon a recognition that the funds which are being transmitted to the creditor constitute the money or assets of the debtor, and the latter is the sole master of his estate with a right to direct its manner or form of disposition." Cent. Nat'l Bank of Canajoharie v. Paton, 439 N.Y.S.2d 619, 621 (Sup. Ct. Otsego Cty. 1981).

A notation on a check is a sufficient designation where it is clear enough to put the creditor on notice as to how the debtor intended the funds to be applied. See id. (finding that the notation "Nov. Dec." on a check left "no doubt" that the funds were to be applied towards November and December payments); Cukierski v. Standard Milling Co., 303 N.Y.S.2d 586, 588

(N.Y. City Civ. Ct. 1969) (finding the notation "replace check number 224" to be "ample evidence" that the check was offered in connection with a particular transaction). While noting that the issue of whether or not a designation was sufficiently clear is ordinarily a question of fact, the court in Paton found it appropriate to consider on a motion for summary judgment where, based on the circumstances of the case, "there could be no doubt as to what was intended." Paton, 439 N.Y.S.2d at 621.

Respondent has submitted images of checks clearly labeled "settlement payment" and numbered "1 of 24," "2 of 24," etc. to correspond to the number of payments required under the unexecuted settlement agreement. (See Original Checks; Replacement Checks, Ex. B to Falesto Decl., Dkt. No. 32-2.) Petitioner does not argue that respondent's notations were in any way unclear; rather, it argues that it was free to apply respondent's payments as it saw fit because the settlement agreement was never executed. (See Pet.'s Reply at 4.) I find that respondent's notation of "settlement payment" on each check made it undeniably clear that respondent intended its funds to be applied to the award balance. Therefore, regardless of whether there was a binding settlement in place, petitioner was bound to apply respondent's payments to the award as directed.

The next issue the court must resolve is whether or not respondent is liable for the portion of the award owing to liquidated damages. Without reaching a finding as to whether or not petitioner has a policy of waiving liquidated damages, I note that it is undisputed that such a waiver is contingent upon a case settling. (See Pet.'s Reply at 5-6; Rabinowitz Decl. ¶ 13.) It is further undisputed that no settlement was reached here. (See Pet.'s Reply at 3; Rabinowitz Decl. ¶ 7.) Respondent asserts that, because liquidated damages would have been waived under the unexecuted settlement agreement, and because petitioner was unreasonable in failing to

effectuate that settlement, that it should be excused from having to pay the liquidated damages portion of the award. (Rabinowitz Decl. ¶¶ 13-15.) It is not the role of the court to determine whether or not a party's reasons for insisting upon a particular settlement term were reasonable. Moreover, respondent fails to put forth any authority to support its position that petitioner's alleged unreasonableness in insisting upon the disputed term would be a sufficient reason for the court to set aside a portion of a valid arbitration award. See D.H. Blair, 462 F.2d at 110 ("[T]he court must grant the award unless the award is vacated, modified, or corrected.") (internal quotation marks and citation omitted). Therefore, I see no reason to excuse respondent from paying the liquidated damages portion of the award.

The final issue is the amount which remains owing. Including liquidated damages, the total balance as of January 1, 2019 was $259,646.79. (See Rabinowitz Decl. ¶ 8 (indicating that respondent sent the first check on January 2, 2019).) Respondent claims that it sent petitioner thirteen payments, each in the amount of $13,332.50, for a total of $173,322.50. (See id. ¶ 17.) Petitioner, on the other hand, claims that it received only ten payments, totaling $133,325.[2] (See Declaration of Christina Sessa, dated Apr. 12, 2019 ("Sessa Decl."), Dkt. No. 35, ¶ 10.) Meanwhile, the check images submitted by respondent add up to a figure that does not match either party's account.[3] In a summary proceeding such as this one, the court cannot make

---

[2] Specifically, petitioner claims that it never received check number 2836, which was intended to cover payment twelve, and that it returned check number 2841, which was intended to cover payments eleven and thirteen. (See Sessa Decl. ¶¶ 10 n.1, 16 n.3; Original Checks.) Check number 2832, the original check intended to cover payment 11, was returned for insufficient funds. (See Sessa Decl. ¶ 10 n.1; Rabinowitz Decl. ¶ 12.)

[3] Respondent has submitted scans of the original checks it sent to petitioner, as well as replacement checks intended to cover payments five, six, and eight. (See Original Checks; Replacement Checks.) According to respondent, the original checks intended to cover these payments were "problematic," hence they were replaced. (See Falesto Decl. ¶ 12.) Making the
(Continued . . . )

findings of fact or credibility determinations; therefore, in light of the unclear and contradictory record before me, I cannot determine how much of the $259,646.79 balance remains unpaid. The parties are directed to file supplemental materials, such as bank records, clarifying how much of the award balance remains outstanding by September 13, 2019. If the court is unable to resolve the dispute on the papers, an evidentiary hearing will be held.

3. Attorney's Fees and Costs

Petitioner additionally requests attorney's fees and costs. (See Pl.'s Mem. at 5-6.) Given the likelihood that petitioner's counsel will incur additional fees in making its supplemental submission and, potentially, appearing at an evidentiary hearing, the court defers a ruling on petitioner's fee application until the issue of the remaining balance can be resolved.

4. Interest

Although the petition requests interest "from the date of the Award through the date of judgment" (Pet. at 9), petitioner makes no mention of interest in any of its subsequent filings. (See Pet.'s Mem., Pet.'s Reply.) If interest is requested, petitioner shall make a proper application, including calculations.

CONCLUSION

For the reasons set forth above, petitioner's motion is granted in part and denied in part. While the award is confirmed, respondent is entitled to a reduction in the amount due for

---

replacements as noted, the checks add up to $187,589.27—a figure higher than what either party claims respondent paid. (See Original Checks; Replacement Checks.) This is because the replacement checks are for higher amounts than the originals. (See id.) For example, the check intended to replace payments five and six is for $34,788.75, with $20,680.73 allocated to payment five and $14,108.02 allocated to payment six. (See Replacement Checks.) Meanwhile, the check intended to replace payment eight is for $19,475.52. (See id.) Respondent does not explain why the replacement checks were made out in these amounts. Neither party has submitted bank records or cancelled checks.

the payments it made following the breakdown in the parties' settlement negotiations. Respondent remains liable for the liquidated damages portion of the award. Because I cannot determine based on the record before me how much remains of the award balance, the parties are directed to file supplemental materials that will allow the court to determine precisely how much respondent has paid and, in turn, how much remains owing. These submissions shall be filed by September 13, 2019. If the court cannot resolve the issue based on the papers, an evidentiary hearing will be held. A decision on attorney's fees and costs is deferred until the remaining dispute is resolved. If interest is requested, petitioner shall make a proper application, including calculations.

    SO ORDERED.

                                                    /s/
                                    ROBERT M. LEVY
                                    United States Magistrate Judge

Dated: Brooklyn, New York
       August 28, 2019