UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In the Matter of the Arbitration Between: DR.
GERALD R. FINKEL, as Chairman of the Joint
Industry Board of the Electrical Industry,

                Petitioner,                           MEMORANDUM
                                                                   AND ORDER
     -and-                                                    18 CV 3798 (CBA)(RML)

ALLSTATE ELECTRIC CORPORATION,

                Respondent.
----------------------------------------------------------X
LEVY, United States Magistrate Judge:

        On August 28, 2019, I issued a Memorandum and Order granting in part and denying in part petitioner's motion to confirm an arbitration award.[1] (See Memorandum and Order, dated Aug. 28, 2019 (the "M&O"), Dkt. No. 40.) While I confirmed the award, I held that respondent was entitled to a reduction in the amount due in order to account for payments it had made to petitioner since the issuance of the award, which petitioner had not applied to the award balance. (See id. at 6-7.) Because I was unable to determine based on the record the exact amount due and owing, I directed the parties to make supplemental submissions clarifying the amount paid. (See id. at 8-9.) Having received multiple rounds of supplemental submissions and held a telephone conference with the parties, I find that petitioner is owed $46,326.79 on the award, plus $15,534.80 in attorney's fees and $745.18 in costs.

---

[1] The parties consented to my jurisdiction to decide petitioner's motion. (See Consent to Magistrate Judge Disposition, dated Feb. 8, 2019, Dkt. No. 21.)

## BACKGROUND AND FACTS

Familiarity with the underlying facts of this case and with the M&O is assumed. Briefly, an arbitration award was issued on June 12, 2018 in favor of petitioner Dr. Gerald R. Finkel, Chairman of the Joint Industry Board of the Electrical Industry ("petitioner"), in the amount of $915,030.97. (See id. at 2.) On June 29, 2018, petitioner moved to confirm the award. (See Petition to Confirm Arbitration Award, dated June 29, 2018 ("Pet."), Dkt. No. 1.) At some point thereafter, respondent paid a portion of the award, leaving a balance of $259,646.79 unpaid. (See M&O at 3.) The parties then entered into settlement negotiations in an attempt to resolve their dispute as to the remaining balance. (See id.) They reached an agreement in principal, but were ultimately unable to finalize and execute a settlement agreement. (See id.) Following the breakdown in the parties' settlement negotiations, respondent sent petitioner a series of checks labeled "settlement payment" and numbered "1 of 24," "2 of 24," etc. to correspond to the number of payments that would have been made under the settlement agreement had it been executed. (See id.) Petitioner cashed those checks, but did not apply them to the award balance. (See id. at 4.) Petitioner then renewed its confirmation motion, seeking the full balance of $259,646.79. (See Motion to Confirm Arbitration Award, dated Feb. 22, 2019, Dkt. No. 23.) Respondent did not dispute the validity of the underlying award, but did dispute the amount due. (See M&O at 5.)

In the M&O, I confirmed the award, but held that respondent was entitled to have the payments it had made following the breakdown in settlement negotiations applied to the award balance. (See id. at 6-7.) Unfortunately, I was unable to award damages at that time because the record was unclear as to how much respondent had already paid. Whereas respondent claimed it had sent petitioner thirteen checks, each in the amount of $13,332.50, for a

total of $173,322.50, petitioner claimed it had received only ten checks, totaling $133,325.  (See id. at 8.)  Therefore, I directed the parties to submit supplemental documentation clarifying the amount paid.  (See id. at 8-9.)  I additionally deferred a ruling on petitioner's application for attorney's fees and costs until a final judgment could be entered.  (See id. at 9.)

On September 11, 2019, petitioner filed the declaration of Christina Sessa, Esq., which stated that petitioner had received *sixteen* payments of $13,332.50, for a total of $213,320.  (See Declaration of Christina Sessa, Esq., dated Sept. 10, 2019 ("Sessa Decl."), Dkt. No. 41, ¶ 2; Petitioner's Payment List ("Pet.'s Payment List"), annexed as Ex. A to Sessa Decl.)  Thus, according to petitioner, a balance of $46,326.79 remains due and owing.  (See Sessa Decl. ¶ 5.)  Meanwhile, on September 20, 2019, respondent filed the declaration of Robert Falesto, which stated that respondent had made *seventeen* payments of $13,332.50, for a total of $226,652.50.  (See Declaration of Robert Falesto, dated Sept. 17, 2019, Dkt. No. 44, ¶ 4; Respondent's Payment List ("Resp.'s Payment List"), annexed as Ex. A to Falesto Decl.)  Thus, according to respondent, a balance of $32,994.29 remains due and owing.  (See Falesto Decl. ¶ 8.)  The parties' dispute centers on a single check, intended to cover the twelfth installment payment under the unexecuted settlement agreement ("check 2836" or "payment twelve"), which respondent claims it sent to petitioner and petitioner claims it never received.  (See Pet.'s Payment List; Resp.'s Payment List.; see also Declaration of Christina Sessa, Esq., dated Apr. 12, 2019, Dkt. No. 35, ¶ 10, n.1.)

On October 10, 2019, I held a telephone conference with the parties, at which I sought to determine the status of check 2836.  (See Minute Entry, dated Oct. 10, 2019.)  Respondent's counsel stated that he would confer with his client's bank and confirm by letter whether the check had been cashed and, if not, whether the funds were returned to defendant's

3

account or retained by the bank.  (See id.)  By letter dated October 21, 2019, respondent's counsel reported that the bank was not able to provide any information as to the status of the check.  (See Letter of Michael Rabinowitz, Esq., dated Oct. 21, 2019 ("Rabinowitz Ltr."), Dkt. No. 45.)  In that letter, respondent's counsel further clarified that, of the seventeen payments it claims to have sent petitioner, thirteen were in the form of regular checks, each in the amount of $13,332.50.  (See id.)  The remaining four were in the form of two cashier's checks, each in the amount of $26,665.  (See id.)  Petitioner does not dispute receiving two cashier's checks in that amount, but maintains that it received only twelve regular checks.  (See Letter of Nicole Marimon, Esq., dated Oct. 21, 2019 ("Marimon Ltr."), Dkt. No. 46.)  Thus, the dispute remains over a single payment of $13,332.50.

## DISCUSSION

1. Damages

Under New York law, payment of a debt is an affirmative defense, which the debtor bears the burden of proving.  See, e.g., Syrup Assocs. v. Coastal Dev. Mass., LLC, 18 CV 8133, 2019 WL 2121878, at *4 n.2 (S.D.N.Y. May 15, 2019) (citing Weidenfeld v. Pac. Improvement Co., 43 F.2d 817, 820 (2d Cir. 1930)); see also 5A Carmody-Wait 2d § 30:65.  In this case, the only evidence of payment that respondent has put forth is a scanned image of check 2836, which is ultimately not probative of whether petitioner actually received the funds.[2]

---

[2] During the October 10, 2019 telephone conference, respondent's counsel suggested that payment twelve was made via cashier's check, meaning that the funds would have been drawn from respondent's bank account at the time the check was obtained.  As a preliminary matter, if respondent cannot show that the funds at issue were delivered to petitioner, it is irrelevant when they were drawn from respondent's account.  Moreover, the record does not support the contention that payment twelve was made by cashier's check.  While it is undisputed that

(Continued . . . )

(See Check Images, annexed as Ex. A to the Declaration of Robert Falesto, dated Apr. 4, 2019, Dkt. No. 33.) Additionally, respondent has not demonstrated that the check in question was ever cashed or that the proceeds of that check were deducted from its bank account. Accordingly, I find that respondent has put forth insufficient evidence of payment and that petitioner is entitled to damages of $46,326.79, representing the award balance of $259,646.79 less payments of $213,320.

2. Attorney's Fees and Costs

Petitioner requests attorney's fees and costs pursuant to 29 U.S.C. § 1132(g). (See Pet. ¶ 37.) That provision requires the court to direct an award of reasonable attorney's fees and costs where a judgment is entered in favor a multiemployer plan. See 29 U.S.C. § 1132(g). While this entitlement does not necessarily apply to petitions to confirm an arbitration award, courts typically award attorney's fees and costs where a respondent "refuses to abide by an arbitrator's decision without justification." Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, and Labor Mgmt. Cooperation Funds v. CEI Contractors, Inc., No. 18 CV 3467, 2019 WL 117603, at *4 (E.D.N.Y. Jan. 7, 2019) (citation omitted); see also Trs. of Ne. Carpenters Health, Pension, Annuity, Apprenticeship, and Labor Mgmt. Cooperation Funds v. Excel Installations, LLC, No. 19 CV 3012, 2020 WL 429135, at *4 (E.D.N.Y. Jan. 27, 2020).

---

respondent delivered two cashier's checks to petitioner, it appears from both parties' payment lists that those checks covered payments other than payment twelve. (See Pet.'s Payment List; Resp.'s Payment List; see also Marimon Ltr.) As part of its supplemental submission, respondent submitted an image of a cashier's check on which the notation "12 & 13" had been handwritten. (See Supplemental Check Images, annexed as Ex. 1 to Rabinowitz Ltr.) I note, however, that the memo line of that check contains the typed notation "week 11 and 13." As discussed in the M&O, the check originally intended to cover payment eleven was returned for insufficient funds; those funds were replaced with payment thirteen. (See M&O at 8 n.2; Pet.'s Payment List; Resp.'s Payment List.)

In this case, the court need not determine whether respondent refused to abide by the award without justification, because the Collective Bargaining Agreement and Collection Policy each provide an independent basis for an award of attorney's fees and costs. (See Collective Bargaining Agreement, effective May 11, 2016 through April 10, 2019, annexed as Ex. A to Pet., art. 2, § 12(a) (providing that, in the event of delinquency, respondent shall be liable for the remedies provided under 29 U.S.C. § 1132(g)); Policy for the Collection of Delinquent Contributions, annexed as Ex. B to Pet., art. 2, § E(2) (providing that respondent is liable for attorney's fees and costs where petitioner commences a legal action to collect delinquent contributions)); see also CEI Contractors, Inc., 2019 WL 117603, at *4 ("[T]he Court need not decide whether respondent refused to abide by the arbitrator's award without justification because the Collection Policy obligates employers who fail to make timely contributions to the Funds to pay attorney's fees and costs incurred in recovering the delinquent contributions. . . .This agreement is a sufficient basis upon which to award attorney's fees and costs."). Accordingly, an award of attorney's fees and costs is appropriate. Petitioner requests $20,880.50 in attorney's fees. (See Declaration of Nicole Marimon, Esq., dated Sept. 11, 2019 ("Marimon Decl."), Dkt. No. 42, ¶ 9; Time Records, annexed as Ex. B to Marimon Decl.)

In calculating a reasonable fee award, the court must first establish a reasonable hourly rate, which is "what a reasonable, paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany, 522 F.3d 182, 184 (2d Cir. 2008). In determining a reasonable hourly rate, a court considers the rates in the community in which the action is pending and the skill and experience of the attorneys working on the case. Luciano v. Olsten Corp., 109 F. 3d 111, 115-16 (2d Cir. 1997). The "community" is generally considered to be the district where the court sits. See Arbor Hill, 522 F.3d at 190. The party seeking fees

further bears the burden of establishing that the number of hours for which it seeks compensation is reasonable. Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994). Where the hours billed are excessive, the court may make an across-the-board percentage reduction in lieu of an itemized reduction. See Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998). "Courts have broad discretion to assess the reasonableness of each component of a fee award." Jaramillo v. Banana King Rest. Corp., No. 12 CV 5649, 2014 WL 2993450, at *8 (E.D.N.Y. July 2, 2014).

Here, petitioner is represented by the law firm of Virginia & Ambinder LLP ("V&A"), which seeks compensation for the work of four attorneys—Charles Virginia, Nicole Marimon, Julie Dabrowski, and Kelly Malloy—as well as various unnamed legal assistants. (See Marimon Decl. ¶¶ 3-7.) Mr. Virginia is a founding partner of V&A and has over twenty years of experience litigating ERISA matters. (Id. ¶ 4.) Ms. Marimon graduated from law school in 2014 and has regularly served as lead counsel on ERISA matters since her admission to the bar. (Id. ¶ 3.) She was an associate at the time this action was commenced, but was promoted to partner effective March 1, 2019. (Id.) Ms. Dabrowski and Ms. Malloy are each former V&A associates who graduated from law school in 2014 and 2018, respectively. (Id. ¶¶ 5-6.) Petitioner requests hourly rates of $350 for Mr. Virginia and for Ms. Marimon after her promotion to partner; $275 for Ms. Dabrowski, Ms. Malloy, and Ms. Marimon prior to her promotion to partner; and $120 for the work of the legal assistants. (Id. ¶¶ 3-7.)

Typical hourly rates in this district are "generally between $300 and $400 for law firm partners, $200 to $300 for senior associates, and $100 to $200 for junior associates." Trs. of Local 1034 Pension Tr. Fund v. N. Cancro, Inc., No. 18 CV 7412, 2019 WL 7580098, at *5 (E.D.N.Y. Dec. 18, 2019) (quoting LG Capital Funding, LLC v. 5Barz Int'l Inc., No. 16 CV

7

2752, 2019 WL 3082478, at *2 (E.D.N.Y. July 15, 2019)), report and recommendation adopted, 2020 WL 207902 (E.D.N.Y. Jan. 14, 2020). While I find the rate requested for Mr. Virginia to be reasonable given his significant experience with ERISA litigation, see, e.g., Trs. of Local 522 Pension Fund v. Consol. Cos., No. 17 CV 1991, 2018 WL 2078117, at *9 (E.D.N.Y. Feb. 6, 2018) (finding $350 to be a reasonable hourly rate for two partners with fourteen and twenty four years of experience), report and recommendation adopted, 2018 WL 1521775 (E.D.N.Y. Mar. 27, 2018), the rates requested for the other attorneys and for the legal assistants are slightly higher than what is typically awarded in this district.

With respect to Ms. Marimon, I find $250 to be a reasonable hourly rate for her work as an associate; however, I will award $300 per hour for her work as a partner. See, e.g., Excel Installations, 2020 WL 429135, at *5 (finding $300 to be a reasonable hourly rate for Ms. Marimon's work as a partner); Trs. of Pavers and Road Builders Dist. Council Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Safety Funds v. Genrus Corp., No. 18 CV 4232, 2019 WL 4604972, at *8 (E.D.N.Y. Sept. 6, 2019) (approving requested hourly rate of $250 for Ms. Marimon's work as an associate), report and recommendation adopted, 2019 WL 4602880, (E.D.N.Y. Sept. 23, 2019); Finkel v. IAG Elec., Inc., No. 19 CV 3075, 2019 WL 3281012, at *2-3 (E.D.N.Y. July 19, 2019) (reducing Ms. Marimon's rate to $250 per hour from requested $350 per hour). I also find $250 to be a reasonable hourly rate for Ms. Dabrowski, who was an associate for the duration of the time spent working on this matter and whose experience is commensurate with Ms. Marimon's. Because Ms. Malloy was in her first year of practice at the time she worked on this matter, a lower hourly rate of $200 is appropriate. Compare Excel Installations, 2020 WL 429135, at *5 (reducing Ms. Malloy's hourly rate to $175 per hour from requested $225 per hour) with Genrus Corp., 2019 WL 4604972, at *8 (finding

$250 to be a reasonable hourly rate for Ms. Malloy). Finally, I find $90 per hour to be reasonable compensation for the work of the legal assistants. See Excel Installations, 2020 WL 429135, at *5 (awarding $90 per hour for the work of a paralegal).

Petitioner seeks compensation for 63.7 hours of attorney time (8.2 for Mr. Virginia, 39.8 for Ms. Marimon, 7.3 for Ms. Dabrowski, and 8.4 for Ms. Malloy), as well 10.9 hours of legal assistant time, for a total of 74.6 hours. (See Marimon Decl. ¶ 9; Time Records.) While this case was more complex than a straightforward ERISA default, I nonetheless find the hours billed to be slightly excessive and will apply a fifteen percent across-the-board reduction. Accordingly, petitioner is awarded $15,534.80 attorney's fees as follows:

| Name | Hourly Rate | Number of Hours | Total |
| --- | --- | --- | --- |
| Charles Virginia | $350 | 6.97 | $2,439.50 |
| Nicole Marimon (Partner) | $300 | 16.41 | $4,923 |
| Nicole Marimon (Associate) | $250 | 17.43 | $4,357.50 |
| Julie Dabrowski | $250 | 6.21 | $1,552.50 |
| Kelly Malloy | $200 | 7.14 | $1,428 |
| Legal Assistants | $90 | 9.27 | $834.30 |
| **TOTAL** | | | $15,534.80 |

Petitioner also requests $818.18 in costs, consisting of $400 for this court's filing fee; an additional $73 court fee; $170 in service of process fees; $63.59 in postage; $3.09 in Courtlink fees; and $108.50 in LexisNexis fees. (See Marimon Decl. ¶ 10; Time Records.) Filing, service, postage, and legal research fees are routinely recoverable in this district. See, e.g., Gesualdi v. Scara-Mix, Inc., No. 14 CV 765, 2017 WL 5564673, at *10 (E.D.N.Y. Nov. 17,

2017); see also Genrus Corp., 2019 WL 4604972, at *9.  However, petitioner has not explained or documented the $73 "court fee"; nor is there is any evidence of payment of this fee on the docket.  Accordingly, petitioner is awarded $745.18, representing all of the requested costs except for the $73 court fee.

   3. Pre-Judgment Interest

In the M&O, I noted that, although the petition makes a vague request for prejudgment interest, petitioner had made no mention of interest in any of its subsequent filings. (See M&O at 9.)  I then stated that "[i]f interest is requested, petitioner shall make a proper application, including calculations."  (Id.)  Petitioner has not done so; therefore, I presume prejudgment interest is not being requested and do not award any.

CONCLUSION

For the reasons set forth above, petitioner is awarded $46,326.79 in damages, $15,534.80 in attorney's fees, and $745.18 in costs.

SO ORDERED.

Dated: Brooklyn, New York
       April 14, 2020

                                            _____/s/_____
                                            ROBERT M. LEVY
                                            United States Magistrate Judge